UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. SPENCER, | |
| Plaintiff, | |
| v. | No. 08 C 85 |
| CITY OF ROLLING MEADOWS, JOE PISTORIUS, AND MARK HINDS, | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Michael Spencer alleges that Detectives Joe Pistorius and Mark Hinds (the "Detectives") of the Rolling Meadows Police Department violated the Fourth Amendment when they searched Spencer's car and arrested him. R. 109 (Counts II and III). Spencer also alleges that the City of Rolling Meadows's policy for impounding cars violated the Fourth Amendment, *id.* (Count I), and seeks indemnification from the City for any illegal actions by Detectives Pistorius or Hinds. *Id.* (Count IV). Defendants have moved for summary judgment on all claims. R. 145. For the following reasons, Defendants' motion is granted.[1]

**Background**

The events of this case stem from a missing person investigation. On October 23, 2005, J.K. reported to the Rolling Meadows Police Department that her 17-year-

---

[1] Dan Cook was a defendant at the time the motion was filed, but the Court dismissed him from the case for reasons stated on the record on February 10, 2014. R. 170. The Rolling Meadows Police Department was also originally a defendant in this case, but it was dismissed without objection on April 3, 2012. R. 91.

old daughter A.K. was missing. R. 155 (Plaintiff's Response to Defendants' Statement of Material Facts) ¶ 5. J.K. gave the police a phone number she found in A.K.'s phone that A.K. had called frequently, which was identified with the name "Michael." *Id.* ¶ 11. Spencer admits that J.K. reached him by calling this number. *Id.* Spencer also admits that the police reached him at this number, and he told the police that he knew A.K. but did not know where she was. *Id.* ¶ 12.

Over the next several weeks after J.K. reported A.K. missing, A.K. called home twice. *Id.* ¶¶ 7, 10. The police also received several reports that A.K. had been seen around town. *Id.* ¶¶ 10, 19. In particular, Commander Joseph Waitzman (the supervisor in charge of the Investigations Unit of the Rolling Meadows Police Department), spoke with a friend of A.K., Hannah Leonard, who said she had seen A.K. *Id.* ¶ 19.

On November 18, 2005, Detectives Pistorius and Doucet (another detective on the case) went to Leonard's house and encountered Leonard with Spencer. *Id.* ¶¶ 26, 28. Leonard and Spencer were roommates. *Id.* ¶ 41. Leonard and Spencer told the officers that they did not know where A.K. was and invited the officers to check inside the house. *Id.* ¶ 28. Detective Pistorius observed photography equipment, feather fans, and lingerie in the house. *Id.* ¶ 29. Detective Pistorius believed that the equipment was being used to create pornography. *Id.* ¶ 30.

At some point in the course of the investigation, Detective Doucet googled Spencer's phone number and found that it was associated with the web address www.sirenseroticentertainment.com. *Id.* ¶ 32. Spencer was listed as the contact

2

person for the website. *Id.* The website included photos of girls dressed provocatively, and Doucet identified one of the girls as A.K. *Id.*

The police also learned that A.K.'s acquaintance, Lisa Candir, might have information about A.K.'s whereabouts, *id.* ¶ 21, and that Candir also appeared on Spencer's website. *Id.* ¶ 37. Commander Waitzman and Detective Doucet went to Candir's home on January 4, 2006, and spoke with her mother. *Id.* ¶¶ 36-37. Candir's mother told them that she had recently discovered a hotel key in Candir's wallet and found "sexy" clothes in Candir's room, and that Candir stayed out until the early morning hours. *Id.* ¶ 38.

Later that day, Commander Waitzman and Detective Doucet spoke with Candir at the police station. *Id.* ¶ 40. Candir told the officers that Spencer recruited her to be a model and "call girl" for his website. *Id.* ¶ 41. Spencer admits that Candir told the police that his website is a "call girl service that is made to appear as an escort or modeling service." *Id.* ¶ 42. She also told the police that Spencer vetted the potential clients and arranged a date, time, and location for the client to meet with the "call girl" at a hotel. *Id.* ¶¶ 42-43. Defendants allege that Candir also told the police that Spencer negotiated what sex acts the call girl would perform for the client and the price, *id.* ¶ 44, and that Spencer supplied drugs to some of the call girls. *Id.* ¶ 45. Spencer disputes that Candir stated that sex acts were ever performed by her or others, and that she stated that he provided drugs to some of the call girls. *Id.* ¶¶ 44-45. Spencer alleges that Commander Waitzman and Detective Doucet coerced Candir's statements because they threatened to arrest

3

her, which would cause her to miss her birthday party. R. 155 (Plaintiff's Statement of Additional Facts) ¶¶ 4-13.

Based on the website and Candir's statements, Detectives Pistorius and Hinds went to Spencer's house, but they did not receive a response when they knocked on the door. R. 155 (Plaintiff's Response to Defendants' Statement of Material Facts) ¶¶ 48-49. The Detectives waited outside the house, and eventually a car registered to Spencer exited the garage. *Id.* ¶¶ 50-51. The Detectives followed the car and turned on their car's sirens. *Id.* Spencer drove his vehicle into the parking lot of a public high school, stopped the car, got out, locked it, and put the keys in his pocket. *Id.* ¶¶ 51-52. Detective Pistorius called Commander Waitzman, and Waitzman authorized the Detectives to arrest Spencer for pandering, which they did. *Id.* ¶ 54.

Detective Pistorius conducted a pat-down search of Spencer and found $8,000 in his pants pocket, and took the car keys out of Spencer's pocket. *Id.* ¶¶ 56, 58. A police car arrived to take Spencer to the police station. *Id.* ¶ 56.

The Detectives then searched Spencer's car. *Id.* ¶ 58. Detective Hinds found several cell phones and a laptop computer in the passenger compartment of the car. *Id.* ¶ 59. Detective Pistorius found a metal box in the trunk and used a key from Spencer's key ring to open it. *Id.* The box contained several bundles of $100 bills wrapped in rubber bands and several clear plastic baggies containing cocaine. *Id.* Spencer's vehicle was subsequently towed from the parking lot to the police station. *Id.* ¶ 60.

4

On January 6, 2006, A.K. returned to her mother's house of her own volition. *Id.* ¶ 64.

Spencer was charged with pandering and possession of a controlled substance with intent to sell. *Id.* ¶¶ 70-71. Prior to his trial, Spencer filed a motion to quash his arrest and suppress illegally obtained evidence. *Id.* ¶ 72. The state court denied his motion, finding that the search of his car was a proper search incident to arrest and inventory search. *Id.* Spencer was convicted of possession of a controlled substance with intent to deliver and was sentenced to 15 years in prison. *Id.* ¶ 73.

On appeal, the appellate court overturned Spencer's conviction, finding that the impoundment and search of Spencer's was unlawful. *See People v. Spencer*, 948 N.E.2d 196 (Ill. App. Ct. 1st Dist. 2011). The court discussed the City's impoundment policy (the "Policy"), which stated in relevant part:

> VI. TOWS SUBSEQUENT TO ARREST
>  A. The vehicle may be left at the scene of the arrest when the arrest occurs:
>   1. In the private driveway or residential parking lot of the arrestee, or
>   2. In parking lots that are open to the public (i.e. shopping center lots, motel/hotel lots, and office complex lots), and with the permission of a shift supervision and the vehicle owner.
>   3. Exception: DUI arrests refer to IUC 625 ILCS 5/4—203(e)
>  B. In cases involving a custodial arrest on a public roadway where the vehicle cannot be legally parked and where there is no other

> licensed driver to take immediate control of
> the vehicle, the vehicle shall be towed.[2]

The court held that the Detectives properly followed the Policy, *Spencer*, 948 N.E.2d at 203, but that the "mere fact that the defendant's vehicle would have been left unattended is insufficient to justify its impoundment." *Id.* at 205. The court held that the cocaine would not have been discovered but for the illegal search and that there was insufficient evidence to convict Spencer without the cocaine. *Id.* at 206. Spencer was released after spending more than five years in prison. R. 156 at 1.

Spencer filed this case on January 4, 2008. R. 1. He alleges that Defendants did not have probable cause to arrest him or search his car, and that the search was not a proper inventory search. *See* R. 109 (Counts II & III). Spencer also alleges that these Fourth Amendment violations caused him "damages including, but not limited to, his unlawful incarceration for over three years, and the loss of his cash, vehicle and personal property." R. 109 ¶¶ 35, 40.[3]

---

[2] The parties provided a complete copy of the Policy to the Court at oral argument on February 10, 2014.

[3] Though not relevant to the disposition of this motion, the Court notes that there is authority indicating that Spencer is not entitled to compensatory damages for his incarceration. *See Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999) ("In a § 1983 suit, constitutionally invalid police conduct that by itself causes little or no harm is assessed on ordinary principles of tort causation and entails little or nominal damages. The fruit of the poisonous tree doctrine is not available to elongate the chain of causation [to include compensatory damages for incarceration]."); *see also Gauger v. Hendle*, 349 F.3d 354, 362-63 (7th Cir. 2003) ("[T]he interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects." (citing *Townes*, 176 F.3d at 145-48)); *Williams v. Edwards*, 2012 WL 983788, at *7 (N.D. Ill. Mar. 22, 2012) (citing cases).

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

**I.     The Arrest**

In Count III of his complaint, Spencer alleges that the Detectives arrested him in violation of the Fourth Amendment. R. 109 ¶¶ 41-43. Spencer does not dispute that the Detectives knew of the following evidence prior to arresting him: (1) Spencer's name and phone number were associated with a website with an address that included the words "erotic entertainment," depicting provocatively dressed woman; (2) Spencer's house contained photography equipment and lingerie, evoking pornographic activity; (3) Candir stated that she worked for Spencer as a

7

"call girl" who could be hired through the website; and (4) Candir stated that her work as a "call girl" involved meeting men at a hotel.

Spencer does not argue that these facts fail to establish probable cause for pandering. Instead, Spencer contends that (1) the Detectives did not have probable cause to arrest him because Detective Pistorius testified in state court that Candir's statements were the sole basis for Spencer's arrest, and (2) Candir's statements were coerced. R. 156 at 12. The Court's analysis of probable cause, however, is an objective one that does not consider Detective Pistorius's subjective belief at the time of the arrest. *See Williamson v. Curran*, 714 F.3d 432, 446-47 (7th Cir. 2013) ("The deputies' admissions at trial thus do not require us to ignore the information known to the deputies, which for the reasons we have discussed did [establish probable cause]. . . . [T]heir understanding is immaterial for purposes of the probable cause determination. The standard governing that determination is an objective one which asks what a reasonable person would be warranted in believing based on the facts known to the arresting officer, not what the arresting officer actually thought or what his motivation was."). Furthermore, Spencer admits that neither of the individual defendant detectives was involved in questioning Candir; rather, Detectives Pistorius and Hinds learned about Candir's statements from Commander Waitzman. Since the question here is what evidence the Detectives had when they arrested Spencer, whether other police officers coerced the statements

Candir made is irrelevant.[4] Thus, the undisputed evidence establishes that the Detectives had probable cause to arrest Spencer for pandering.

Even if the Detectives lacked probable cause to arrest Spencer, they are entitled to qualified immunity, which attaches as long as the Detectives' actions can be described as "reasonable mistakes." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013); *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct."). A "plaintiff seeking to defeat a defense of qualified immunity must establish two things: first, that she has alleged a deprivation of a constitutional right; and second, that the right in question was 'clearly established.'" *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Even if Candir's statements were coerced and an objective review of all the evidence suggested that it was not sufficient to establish probable cause, it was certainly reasonable for the Detectives to believe that the evidence available to them was sufficient.

For these reasons, the Detectives are entitled to summary judgment on Count III.

---

[4] Moreover, Spencer's allegations of coercion are insufficient to raise a genuine question of whether Candir's statements were coerced because threatening arrest does not necessarily make a witness's statements involuntary. *See United States v. Miller*, 450 F.3d 270, 272 (7th Cir. 2006) ("A choice between cooperation and freedom, on the one hand, and silence followed by custody and prosecution, on the other, is a common one. This is the real choice many suspects face whether or not the police lay it out in so many words; clear articulation of the options makes a choice better informed and thus more rather than less voluntary."). Since the police suspected that Candir engaged in prostitution, it would not have been unreasonable for the police to suggest that she could be arrested.

## II. The Search

### A. Inventory Search Exception to Warrant Requirement

In Counts I and II, Spencer alleges that Defendants violated the Fourth Amendment when they impounded and searched his car. R. 109 ¶¶ 33-40. The parties' arguments correctly assume that if Spencer's car was properly impounded then the search of the trunk in the parking lot did not violate the Fourth Amendment because the police would have inevitably discovered the cocaine in the trunk during an inventory search upon impoundment. *See United States v. Cartwright*, 630 F.3d 610, 613-14 (7th Cir. 2010). Spencer contends that the circumstances did not justify impounding his car. Specifically, Spencer argues that the City's impoundment Policy violated the Fourth Amendment because it only "provided two situations in which a vehicle may be left at the scene of an arrest," and thus, it "demand[ed] a tow and accompanying custodial inventory search in nearly every instance." R. 156 at 8. In support of this characterization, Spencer cites the testimony of the City's representative that the police "always have the option of towing the vehicle," even if the car did not present a "safety hazard" where it was parked. *See* R. 155-8 at 125:2-4. Spencer argues that the Policy gave police officers too much discretion such that the policy was not sufficiently standardized and exceeded the bounds of the Fourth Amendment. R. 156 at 8.

In order to seize and impound a car in accordance with the Fourth Amendment, the police must follow a "standardized criteria or established routine." *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996). Here, the Policy required

the "permission of a shift supervisor" to leave a car belonging to an arrestee in a "parking lot . . . open to the public." It may be that the Policy provided too much discretion to the police in deciding whether to impound a car; notably, the Illinois Appellate Court held that it did.

Nevertheless, the Court's application if the Fourth Amendment in this case is not controlled by an analysis of the scope of the Policy. *See Cartwright*, 630 F.3d at 614 ("'The question . . . upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law.'" (quoting *Sibron v. New York*, 392 U.S. 40, 61 (1968))). "'The question is rather whether the search was reasonable under the Fourth Amendment.'" *Cartwright*, 630 F.3d at 614 (quoting *Sibron*, 392 U.S. at 61). Here, Defendants' decision to impound Spencer's car complied with the Fourth Amendment because the car was parked in a school parking lot and it was reasonable to remove it. In *Cartwright*, the Seventh Circuit held that the police properly impounded an arrestee's car that the arrestee had parked between two marked parking spaces in a grocery store parking lot. *See* 630 F.3d at 615 n.1. In both *Cartwright* and this case, impoundment was reasonable because the placement of the car "may have created a hazard to others using the lot," *id.*: in *Cartwright* because a car parked between two spaces could prevent the regular use of the lot, and in Spencer's case because the school parking lot was used to capacity during the school day, and necessarily implicates the safety of children. As the City's representative testified

> [the school] never had enough parking ever for the amount of kids. . . . [and] you could not park in [the] lot

11

> after hours if there was no event going on. It was very common [that the police] would check vehicles [left in the lot] . . . and [they] would make every effort to contact the owner and let them know this is private property, you can't park here whether it was posted or not because that was the agreement [the police] had with the school. [The school] would not allow long-term overnight parking.

R. 155-8 at 127:2-3, 11-21.

At oral argument on February 10, 2014, Spencer's counsel argued that there was no evidence that Spencer's car remaining in the school parking lot created a safety concern. But as the Seventh Circuit noted in *Cartwright*, an immediate safety concern is not the only factor the police may reasonably consider. Rather, the police can impound a car that "may . . . create[] a hazard to others using the lot." *Cartwright*, 630 F.3d at 615 n.1. It was reasonable for Defendants to believe that leaving Spencer's car in the school parking lot would create a "hazard to others using the lot," since it was reasonable to assume that the school parking lot was at capacity during school hours, as the City's representative testified. *See* R. 155-8 at 127:2-3, 11-21.[5] Thus, Defendants are entitled to summary judgment on Court II because Defendants' decision to impound the car was reasonable such that the search of the car complied with the Fourth Amendment.

---

[5] Spencer's counsel also argued at oral argument that there was no basis to impound the car because (1) there is no evidence that anyone objected to the car remaining in the parking lot, and (2) Spencer's roommate could have retrieved the car. The "Fourth Amendment [does] not require the police to explore such alternatives." *See Cartwright*, 630 F.3d at 615 & n.1.

12

## B. Probable Cause Exception to Warrant Requirement

Alternatively, Defendants are entitled to summary judgment because the search of Spencer's car was based on probable cause that it contained evidence of pandering. In *Arizona v. Gant*, the Supreme Court held, "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search." 556 U.S. 332, 351 (2009). But the Court also reiterated that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, [the Fourth Amendment] authorizes a search of any area of the vehicle in which the evidence might be found." *Id.* at 347 (internal citation omitted). Here, even prior to stopping Spencer in his car, Defendants had probable cause that Spencer had committed the crime of pandering. Once the Detectives stopped Spencer, they found $8,000 in his pocket. It is true that a large amount of cash by itself is not evidence of criminal activity, *see United States v. Weir*, 703 F.3d 1102, 1103 (7th Cir. 2013), but the Detectives already had probable cause to believe that Spencer was engaged in criminal activity. Thus, when they found that Spencer was carrying a large amount of cash in his car, this created a "fair probability," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), that Spencer kept additional evidence of his criminal activity in his car. *Cf. United States v. Cervantes*, 19 F.3d 1151, 1153 (7th Cir. 1994) ("[A]lthough a wad of cash is not in itself a suspicious object, a wad of cash in the hands of a person who the police have good reason to believe just received it in exchange for a delivery of illegal drugs *is* suspicious and indeed enough so to give the police probable cause to believe it

evidence of criminal activity . . . .") (emphasis in original). Spencer argues that Defendants cannot "identify plausible evidence they expected to find in [Spencer's] trunk which would prove pandering." R. 156 at 13. But it is not difficult to conceive of examples of evidence that could be found in the car—e.g., more cash; client information records; "call girl" information records; hotel receipts; or the drugs Candir told the police Spencer sometimes provided to the call girls. The totality of the evidence gave the Detectives probable cause to search the trunk of Spencer's car.

Lastly, because the Court holds that the Detectives acted reasonably in light of "clearly established" constitutional rights, the Court also holds that the Detectives are entitled to qualified immunity for their actions related to the search. *See Gutierrez*, 722 F.3d at 1008; *see also Saucier*, 533 U.S. at 205.

For these reasons, Defendants are entitled to summary judgment on Counts I and II.[6]

---

[6] The City is also entitled to summary judgment on Count IV because it seeks to have the City pay for any illegal actions by the Detectives, R. 109 ¶¶ 44-46, but the Court has found that the Detectives did not cause any damages to Spencer.

## Conclusion

For the foregoing reasons, Defendants' motion, R. 145, is granted, and Spencer's claims are dismissed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 5, 2014